IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

           Plaintiff,

v.

MICHELLE BELAIR,

           Defendant.

Case No. 17-40043-02-DDC

## MEMORANDUM AND ORDER RULING ON DEFENDANT'S MOTION FOR AMENDMENT OF ORDER DEYNING MOTION TO AMEND CONDITION OF PRETRIAL RELEASE

Defendant Michelle Belair has filed a motion seeking "amendment of [an] order denying motion to amend condition of pretrial release." Doc. 145. Essentially, this motion asks the assigned district judge to eliminate a condition of release that Magistrate Judge Sebelius imposed in the original Order Setting Conditions of Release (Doc. 28). Later, when Ms. Belair moved to modify the disputed condition, Judge Sebelius reconfirmed his conclusion that the targeted condition was warranted. *See* Doc. 144.

Ms. Belair wants the court to review and narrow this condition. *See* Doc. 145. Specifically, she asks the court to modify the condition forbidding her from having contact with her co-defendants so that it won't apply to Jose Ruiz. *Id.* at 2. Mr. Ruiz is one of Ms. Belair's co-defendants in this conspiracy case, a potential witness, and her conditions explicitly forbid her from having contact with him. *Id.*; *see also* Doc. 28 at 2 (¶ 8(j)).

The court conducted a hearing on Ms. Belair's review motion on October 16, 2017. Ms. Belair appeared personally, and her counsel, J. Steven Schweiker, represented her at the hearing. Assistant United States Attorney Jared Maag appeared for the United States. Ms. Belair's

counsel declined to present evidence, but Ms. Belair provided some information in response to the court's questions. Ms. Belair's counsel also provided contextual information via an oral proffer. Namely, counsel proffered that Ms. Belair and Mr. Ruiz had become engaged on February 14, 2017—about a month before the grand jury returned the Indictment against them. Also, counsel proffered that Ms. Belair and Mr. Ruiz had lived together for a time before they were charged and detained in this case (though Judge Sebelius quickly ordered Ms. Belair released subject to specified conditions). Finally, the proffer asserted that Ms. Belair and Mr. Ruiz began seeing one another in October 2016 and that her daughter has a close relationship with Mr. Ruiz. As the court understands the facts, Mr. Ruiz is not the father of this child.

At Ms. Belair's Rule 5 hearing on May 19 of this year, the government moved for pretrial detention. Doc. 11. Six days later, at a detention hearing, the government renewed this request. But the court quickly rejected the government's position, ordering Ms. Belair released subject to pretrial conditions. Doc. 25 ("[T]he government's motion for pretrial detention is DENIED."). About three months later, Ms. Belair asked Judge Sebeluis to modify her conditions, making many of the same arguments she makes now. Again, the government objected. Finally, when Ms. Belair filed the current motion, the government filed a written Response opposing any modification of the condition reaching Mr. Ruiz. *See* Doc. 146. But at the October 16 hearing, AUSA Maag announced that the government's position differed from the one it had presented in its written Response. Mr. Maag explained that he recently had learned that another AUSA had agreed to stand silent on Ms. Belair's motion to modify this condition. Honoring this agreement by his predecessor, Mr. Maag withdrew the government's Response to the current motion. This leaves the court in a peculiar position: a defendant has moved to lighten her restrictions and the United States declines to take a position on the request.

During the October 16 hearing, the United States Probation Officer charged with supervising Ms. Belair advised that Ms. Belair's earlier statements—in the Officer's opinion—contradicted her current position about her relationship with Mr. Ruiz. Namely, the Officer explained that Ms. Belair had informed her in a May 2017 interview that she and Mr. Ruiz had begun dating only in February 2017 (and not in October 2016, as Ms. Belair now contends).

Principally, Ms. Belair argues that the condition prohibiting contact with Mr. Ruiz, a potential witness, wrongfully encroaches on her First Amendment right of association. *See* Doc. 145 at 2 (citing *United States v. Arzberger*, 592 F. Supp. 2d 590, 604 (S.D.N.Y. 2008)). No question can exist about the foundation of Ms. Belair's argument. The right of association is "one of the foundations of our society." *Arzberger*, 592 F. Supp. 2d at 603 (quoting *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 933 (1982)).

But as one might guess, Ms. Belair's argument simplifies the analysis far too much. Her argument neglects a variety of Supreme Court cases recognizing the need to balance associational rights with other equally compelling interests. For instance, in *United States v. Salerno*, 481 U.S. 739 (1987), the Supreme Court explained, "While we agree that a primary function of bail is to safeguard the courts' role in adjudicating the guilt or innocence of defendants, we reject the proposition that the Eighth Amendment categorically prohibits the government from pursuing other admittedly compelling interests through regulation of pretrial release." *Id.* at 753. Consistent with this recognition, the Bail Reform Act confers authority for courts to impose "specified restrictions on personal associations" and "avoid all contact . . . with a potential witness who may testify concerning the offense." 18 U.S.C. § 3142(c)(1)(B)(iv) & (v). So, Ms. Belair's motion requires the court to balance a variety of competing and compelling interests.

The court is mindful that courts properly can impose restrictions to protect a variety of interests—and not just associational rights. For example, the court may restrict a defendant's release rights to protect the safety of individuals or the community, or to assure the defendant's appearance for trial. 18 U.S.C. § 3142(c)(1)(B). Putting a finer point on things, the court likewise can forbid contact with specified individuals to ensure that a defendant does not threaten the judicial process by, intimidating witnesses, for example. *Salerno*, 481 U.S. at 753. But in the main, those concerns do not manifest themselves here. Mr. Ruiz is detained and the government has passed on its opportunity to convince the court that Ms. Belair might intimidate Mr. Ruiz from testifying against her.

This leaves one interest that contact between Ms. Belair and Mr. Ruiz arguably might imperil: the integrity of the judicial process. In a conspiracy case, courts must evaluate whether pretrial contact among alleged coconspirators will permit them to rehearse or fabricate testimony, or allow one alleged conspirator to serve as a courier of information to the others. Naturally, any such conduct would threaten "the courts' role in adjudicating the guilt or innocence of defendants." *Id.* at 753. Assessing the gravity of this risk here is difficult. The government's decision to stand down on Ms. Belair's motion limits the court's access to basic information about the government's theory of the case, and largely eliminates any understanding the court might develop about the roles allegedly played by the conspirators.

But this default does not mean that the court cannot consider its own experience in conspiracy cases. Applying this experience to the competing concerns, the court decides to balance the competing interests by granting Ms. Belair's motion in part and denying it in part. Specifically, the court modifies the condition imposed by the Order Setting Conditions of Release (Doc. 28) in this fashion: The condition imposed by ¶ (8)(j) of this Order Setting

Conditions of Release is modified to: (a) permit Ms. Belair to have *telephone* contact with Mr. Ruiz so long as Mr. Ruiz remains detained; and (b) forbid Ms. Belair and Mr. Ruiz from discussing any aspect of the conduct charged by the Indictment, evidence tending to prove or disprove that conduct, and the criminal offenses charged by the Indictment. This modified restriction will permit associational contact between the two and thus pursue common purposes via "lawful means." *NAACP*, 458 U.S. at 933.

Restricting the contact to telephone conversations likely will minimize the temptation to engage in conduct that might threaten the integrity of the judicial process. The court's experience with pretrial detainees establishes that telephone conversations to and from detention facilities often are recorded. Most defendants apprehend this possibility. Indeed, telephone lines used by pretrial detainees usually contain an explicit warning that telephone conversations on them are recorded and preserved. The court believes that this recording function will inhibit and, the court trusts, eliminate any temptation to engage in conduct prohibited by Ms. Belair's modified condition.

The court also finds that limiting Mr. Ruiz and Ms. Belair's contact to telephone conversations will not materially affect the quality of their associational contact with one another. Even if the court completely eliminated Ms. Belair's restriction against contact with Mr. Belair, she could not have private contact visits with Mr. Ruiz. Instead, the court understands, anyone visiting Mr. Ruiz where currently detained, at most, could talk with him through a Skype-like system. And while the court realizes that a telephone visit will not allow Ms. Belair and Mr. Ruiz to see one another, the court cannot avoid this consequence while taking necessary steps to preserve the integrity of the judicial process. One cannot reasonably doubt that the government "may engage in some conduct that incidentally inhibits protected forms of

association." *Fighting Finest, Inc. v. Bratton*, 95 F.3d 224, 228 (2d Cir. 1996) (quoted in *Arzberger*, 592 F. Supp. 2d at 603). The court finds that its modified condition strikes the proper balance among the various competing interests. It also comports with the general duty to impose "the least restrictive further condition, or combination of conditions" that reasonably will protect the community's safety, defendant's appearance for trial, and other interests important to the judicial system. *See* 18 U.S.C. § 3142(c)(1)(B).

Finally, during the October 16 hearing, Ms. Belair asserted that her restrictions prohibit her from driving her daughter to visit Mr. Ruiz at the detention facility housing him. This is incorrect. So that it is clear, nothing in the court's conditions of release prohibits Ms. Belair from driving her daughter to the parking lot of the detention facility housing Mr. Ruiz and permitting her daughter (presumably accompanied by another adult) to visit Mr. Ruiz.

IT IS THEREFORE ORDERED that Michelle Belair's Motion for Amendment (Doc. 145) is granted in part and denied in part. The condition of pretrial release established in ¶ (8)(j) of Doc. 28 is modified so that it reads as follows: "The defendant [Michelle Belair] must . . . avoid all contact, directly or indirectly, with any person who is or may become a victim or potential witness in the investigation or prosecution, including but not limited to" her co-defendants in this case and all other potential witnesses. This includes co-defendant Jose Ruiz except that Ms. Belair may have *telephone* contact with Mr. Ruiz so long as Mr. Ruiz remains detained. But, the court expressly orders Ms. Belair and Mr. Ruiz not to discuss any aspect of the conduct charged by the Indictment in this case, evidence tending to prove or disprove that conduct, and the criminal offenses charged by this Indictment.

**IT IS SO ORDERED.**

**Dated this 20th day of October, 2017.**

> **s/ Daniel D. Crabtree**
> **Daniel D. Crabtree**
> **United States District Judge**